IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 2:16-cr-141 |
| Plaintiff, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | |
| JOSHUA D. CHAPMAN-SEXTON, : | |
| : | |
| Defendant. : | |

## OPINION AND ORDER

This matter is before the Court on Defendant Joshua D. Chapman-Sexton's ("Defendant" or "Chapman-Sexton") Motion to Suppress Search. (Doc. 16.) The Court held an evidentiary hearing on Defendant's Motion on Monday, January 30, 2017. For the reasons set forth below, Defendant's Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of February 29, 2016, officers from the Buckeye Lake Police Department ("BLPD") responded to a call notifying them of a disturbance. (Gov't Mem. Opp'n to Def.'s Mot. to Suppress (Doc. 35) at 2.) When they arrived at the scene, BLPD officers encountered an intoxicated juvenile, D.M., who eventually confessed that he and two other young men, D.C. and C.G.,[1] had broken into Chapman-Sexton's residence. (*See id.*; *see also* Attachment 1 to Def.'s Mot. to Suppress at 10.) D.M. informed the officers that D.C. and C.G. had stolen a Playstation 4, games, a controller and a flash drive (believed to be a SanDisk Cruzer Micro 4G USB thumb drive) from Chapman-Sexton. (Doc. 16 at 1, 10; Doc. 35 at 2.) D.C. and C.G. turned over these items to the BLPD. (Doc. 16 at 10–11; Doc. 35 at 2.)

---

[1] BLPD Chief Jim Hanzey's affidavit submitted in support of his application for a search warrant names D.C. as Deven Coleman and C.G. as Christian Gullett. (Doc. 16 at 10.)

1

D.C. is Chapman-Sexton's neighbor, and he also lived with Chapman-Sexton for a period of time. (*See* Doc. 16 at 11.) At the time he surrendered the stolen property, D.C. informed the BLPD that Chapman-Sexton told him that the Playstation and flash drive contained child pornography,[2] and that he had viewed child pornography with Chapman-Sexton on these items and on DVDs when the two lived together. (Doc. 16 at 11; Doc. 35 at 2.) Additionally, Chapman-Sexton purportedly told D.C. that he had engaged in oral sex with a 13-year-old acquaintance of D.C.'s ("John Doe") on or around February 27, 2016, and that John Doe's boxers were still at his house from the encounter. (Doc. 16 at 11; Doc. 35 at 2.) BLPD Chief Jim Hanzey ("Chief Hanzey") testified at the January 30, 2017 hearing that D.C. has previously provided him with information—some of which has been reliable, and some that has been less than reliable—but in this instance, Chief Hanzey believed D.C.'s statements.

After speaking with D.C., Chief Hanzey conducted a limited review of the flash drive in order to corroborate D.C.'s assertion that it contained child pornography. (Doc. 16 at 4, 11; Doc. 35 at 2.) Chief Hanzey testified that he conducted this preliminary review because, based on his approximately 32 years of experience with the BLPD, the Licking County Prosecutor's Office would not issue a search warrant unless he first corroborated D.C.'s statements. At the time Chief Hanzey conducted his limited search of the flash drive, he was aware that Chapman-Sexton had recently been released from prison for a previous federal child pornography-related conviction and that he was a registered sex offender. (Doc. 16 at 11.) Chief Hanzey observed three images depicting naked male children and male children engaged in sex acts on the flash drive. (Doc. 16 at 4; Doc. 35 at 3.) After viewing these images, Chief Hanzey stopped searching the flash drive and decided to obtain a search warrant to view the remaining contents. (Doc. 16

---

[2] According to D.C., Chapman-Sexton told him about the child pornography on the flash drive several days before D.C., D.M. and C.G. broke into Chapman-Sexton's residence.

2

at 11; Doc. 35 at 3.) He also contacted Chapman-Sexton, advising him that the BLPD had items it believed had been stolen from his residence and asking him to come to the station to identify them. (Doc. 16 at 4; Doc. 35 at 3.) At the police station, Chapman-Sexton confirmed that the items belonged to him, without reviewing the contents of the flash drive. (Doc. 16 at 4.) Chief Hanzey did not inform Chapman-Sexton that he had discovered child pornography on the flash drive. (*Id.*)

The following day, Chief Hanzey executed an affidavit in support of the BLPD's application for a search warrant, in which he stated that he "viewed the flash drive and did note that there appeared to be child pornography on it."[3] (*Id.* at 11.) The affidavit also contained the information Chief Hanzey had learned from D.C., and noted that Chief Hanzey had "knowledge that Joshua Sexton was recently released from prison for federal convictions for Possession of Child Pornography in Interstate Commerce, and is a registered sex offender for this conviction." (*Id.*) Based on this affidavit, Judge Wright of the Licking County Court of Common Pleas found that there was probable cause to issue a warrant allowing the BLPD to search Chapman-Sexton's residence, and did so on March 1, 2016. (*Id.* at 14–15.) On March 2, 2016, the BLPD obtained another warrant to search several containers seized during the previous day's search of Chapman-Sexton's residence. (*Id.* at 5, 17.) Finally, on March 3, 2016, the BLPD obtained a third search warrant to permit a computer technology expert from the Ohio Bureau of Criminal Investigation and Identification ("BCI") to conduct a forensic examination of the flash drive and other items seized during the burglary and search of Chapman-Sexton's residence. (*Id.* at 5, 19–22; Doc. 35 at 3.)

---

[3] Chief Hanzey testified that he did not bring the flash drive to the Licking County Prosecutor's Office, because the Prosecutor's Office prefers that the BLPD provide it with written reports or witness statements or oral information to support a search warrant application, as opposed to physical evidence.

3

At some point during this process, Chapman-Sexton's federal probation officer was notified that the BLPD was investigating Defendant and contacted FBI Task Force Officer Brett Peachey ("Officer Peachey"), the officer who had investigated Chapman-Sexton for child pornography charges in 2010. (Doc. 35 at 4.) Officer Peachey contacted Chief Hanzey to learn more about the BLPD's investigation. (*Id.*) It was agreed that Officer Peachey would obtain the evidence submitted to BCI and conduct his own forensic investigation in order potentially to pursue federal charges. (*Id.*) Before doing so, Officer Peachey obtained a federal search warrant. (*Id.*) The affidavit supporting Officer Peachey's application for the federal search warrant "did not mention Chief Hanzey's initial warrantless preview of the thumb drive, but did discuss what Chief Hanzey found on the thumb drive when he examined it pursuant to the Licking County warrant." (*Id.*)

In accordance with the federal search warrant, Officer Peachey reviewed 19 items—including the Playstation, the flash drive, and a Microsoft cellular phone. (*Id.*) The Playstation contained one pornographic photo and "numerous entries in the browser history for websites known to contain child pornography and erotica." (*Id.*) The flash drive—which was the same flash drive surrendered by D.C. and confirmed to be Chapman-Sexton's—stored approximately 4000 images and two videos of child pornography. (*Id.*) Finally, the cell phone contained text messages between Chapman-Sexton and John Doe. (*Id.*)

Based on the images and photos found on the flash drive, on July 21, 2016, a grand jury indicted Chapman-Sexton, charging him with two counts of Receipt of Child Pornography and one count of Possession of Child Pornography. (*Id.*) Defendant now moves to suppress any evidence obtained from the forensic examination of his flash drive.

4

## II. LAW AND ANALYSIS

### A. The Fourth Amendment and the Warrant Requirement.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. When a "search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (internal quotation marks and citation omitted). A warrant "ensures that the inferences to support a search are drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id.* (internal citation omitted). The Supreme Court has recognized, however, that the warrant requirement may be overcome in some circumstances because "the ultimate touchstone of the Fourth Amendment is reasonableness." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted)). The warrant requirement is therefore subject to certain exceptions. *Id.* If a warrantless search falls within a specific exception to the warrant requirement, it is reasonable. *Riley*, 134 S. Ct. at 2482.

### B. The Exigent Circumstances Exception.

One "well-recognized exception" to the warrant requirement applies when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *King*, 563 U.S. at 459 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (internal quotation marks omitted)). As relevant here, "the need to prevent the imminent destruction of evidence has long been recognized as a

sufficient justification for a warrantless search." *Id.* at 460 (internal quotation marks and citations omitted).

To establish exigent circumstances in this situation, "the government must first show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." *United States v. Bradley*, 488 F. App'x 99, 103 (6th Cir. 2012) (internal quotation marks and citation omitted). If the government makes this showing, the court must then "balance the interests by weighing the governmental interest being served by the intrusion against the individual interest that would be protected if a warrant were required." *Id.*

### C. The Exigent Circumstances Exception Is Inapplicable.

In an effort to establish exigent circumstances and justify Chief Hanzey's warrantless search of the flash drive, the Government argues that: (1) there was probable cause that evidence of criminal activity would be found on the flash drive; (2) the Government has a heightened interest in protecting digital evidence, which is easily destructible; and (3) Chief Hanzey knew, according to BLPD procedures, that the flash drive would be imminently returned to Chapman-Sexton. (*See* Doc. 35 at 7–9.) None of these reasons establishes an objectively reasonable basis for concluding that the loss or destruction of evidence was imminent under the circumstances.

The Government relies on *United States v. Bradley* to support its point that the nature of the evidence involved weighs in favor of finding exigent circumstances.[4] 488 F. App'x 99 (6th Cir. 2012). In *Bradley*, the Sixth Circuit noted that "the governmental interest in protecting evidence from destruction is particularly high where digital evidence is involved, because such evidence is inherently ephemeral and easily destructible." *Id.* at 104. The *Bradley* court also emphasized the importance of the government's interest in "deterring the production and

---

[4] The Government does not explain how the existence of probable cause that evidence of criminal activity would be found on the flash drive establishes exigent circumstances justifying a warrantless search.

6

dissemination of child pornography." *Id.* But *Bradley* is distinguishable from this case in one important way—which the Government acknowledges: in *Bradley*, the defendant was challenging the warrantless *seizure* of his laptop, not a warrantless search of the same. (Doc. 35 at 8.)

Therefore, while it is certainly reasonable to "doubt[] the wisdom of leaving the owner of easily-destructible contraband in possession of that contraband once the owner is aware that law-enforcement agents are seeking a warrant," *Bradley*, 488 F. App'x at 103, this is not the factual situation here, as the BLPD was in possession of the flash drive. The mere fact that digital evidence *can* be destroyed easily is irrelevant when that evidence is not in the defendant's possession, but instead in the possession of law enforcement. Indeed, although it was not addressing the exigent circumstances exception, the Supreme Court in *Riley* noted that "once law enforcement officers have secured [an electronic device], there is no longer any risk that [an offender] will be able to delete incriminating data," and thus there is no cause for concern that evidence will be destroyed while a warrant is sought. *See Riley*, 134 S. Ct. at 2486.

While the Government argues in its Opposition that, pursuant to "police department procedures, Chief Hanzey knew that the thumb drive would imminently be returned to the defendant" and thus he was faced with the choice of "doing no search and returning a device he believed likely contained contraband to an offender" or doing a limited warrantless search, Chief Hanzey testified at the hearing that the BLPD typically retains possession of property recovered from a burglary for at least 30 days, in order to allow the property's rightful owner sufficient time to decide whether or not to press charges against the perpetrator. Thus, because the BLPD had secured the flash drive and would retain possession of it for approximately 30 days, there

was no cause for concern about the destruction of its contents and there were no exigent circumstances justifying Chief Hanzey's warrantless search.

Rather than performing an initial warrantless preview of the flash drive, Chief Hanzey should have: (1) contacted the Licking County Prosecutor's office and provided a prosecutor with the flash drive; (2) informed a prosecutor that he had received a tip from Chapman-Sexton's former roommate that the flash drive contained child pornography and that D.C. had seen the pornography himself; (3) explained that he knew Chapman-Sexton is a registered sex offender with a previous child pornography conviction, and that he had no reason to disbelieve D.C.; and (4) obtained permission to search the flash drive. Chief Hanzey had ample time to follow this proper procedure, given the BLPD's practice of retaining stolen property for nearly one month. Accordingly, the exigent circumstances exception to the warrant requirement is inapplicable here.[5]

### D. The Flash Drive Evidence Is Admissible Under the Independent Source Doctrine.

The exclusionary rule "prohibits introduction into evidence of tangible materials seized during an unlawful search." *Murray v. United States*, 487 U.S. 533, 536 (1988) (citing *Weeks v. United States*, 232 U.S. 383 (1914)). It also prohibits the introduction of "fruit of the poisonous tree," or "derivative" evidence that is the "product of the primary evidence, or that is otherwise acquired as an indirect result of an unlawful search." *Id.* at 536–37; *see also Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).

However, if the unlawfully obtained evidence has an "independent source," it may be admitted. *See Murray*, 487 U.S. at 537; *see also Silverthorne Lumber Co. v. United States*, 251

---

[5] The Court notes that it is possible that, under some set of circumstances, it may be permissible for a law enforcement officer to preliminarily review an effect that allegedly contains contraband; the Court does not hold that a preliminary review of the sort done by Chief Hanzey is always a Fourth Amendment violation. Rather, the Court merely finds that the exigent circumstances exception is inapplicable here.

U.S. 385, 392 (1920). The justification underlying the independent source doctrine was described by the Supreme Court as follows:

> The interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred .... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

*Murray*, 487 U.S. at 537 (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)). The independent source doctrine applies to evidence "initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." *Id.*

In his Motion, Defendant argues that the evidence obtained from the flash drive must be suppressed, because the initial warrant was "tainted by an illegal search." (Doc. 16 at 7.) According to Chapman-Sexton, "but for the illegal search, no state warrant would have issued, and but for the state warrants and the information gained, the federal warrant would not exist." (*Id.*) Thus, as Defendant correctly notes, it is the burden of the Government to establish that "the chain of events giving rise to the federal warrant is wholly independent and unrelated to the illegal search done by the Buckeye Lake Police and the information gathered from that search." (*Id.*)

The Sixth Circuit has opined on the applicability of the independent source doctrine under *Murray* when a search warrant is issued based on a search warrant application containing information from an illegal search. *See United States v. Jenkins*, 396 F.3d 751 (6th Cir. 2005). The *Jenkins* court interpreted *Murray* to mean that if an "application for a warrant contains probable cause apart from the improper information, then the warrant is lawful and the

independent source doctrine applies." *Id.* at 758. Accordingly, to determine if the independent source rule applies, a court must consider "the sufficiency of the untainted [search warrant] affidavit, to see if probable cause [to issue a warrant] exists without the tainted information." *Id.* at 760 (citing, among others, *United States v. Markling*, 7 F.3d 1309, 1315–16 (7th Cir. 1993) (considering whether probable cause existed after stripping tainted information from a warrant affidavit and noting that "this is the approach federal courts typically take in applying *Murray*"); *United States v. Restrepo*, 966 F.2d 964, 968–70 (5th Cir. 1992) ("[E]vidence obtained in an illegal search is first excised from the warrant affidavit, after which the expurgated version is evaluated for probable cause.")); *see also United States v. Lord*, 230 F. App'x 511, (6th Cir. 2007) (affirming denial of defendant's motion to suppress when search warrant affidavit contained probable cause after being stripped of reference to material gleaned from warrantless search).

With regard to evaluating an affidavit for probable cause, "it has been the rare case in which the Sixth Circuit has found a search warrant based on an informant tip to be inadequate *if* the information has been corroborated to some degree." *Jenkins*, 396 F.3d at 760 (emphasis in original); *see also, e.g., United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986) (finding search warrant based on informant tip to be supported by probable cause).

The Sixth Circuit's decision in *United States v. Ruth*, 489 F. App'x 941 (6th Cir. 2012), is instructive here. In *Ruth*, the defendant's adopted adult son informed the police that his father possessed a computer containing child pornography, and also provided the police with a flash drive of child pornography that he had obtained from the computer. *Id.* at 942. To corroborate this information, the defendant's son stated that he had been sexually abused by the defendant as a child, and that the defendant had also told him about his intention to engage in sex with other

children. *Id.* The police then signed a search warrant affidavit detailing their interview with the defendant's son. *Id.* The defendant moved to suppress the evidence seized from the search of his home that took place after a warrant was issued, claiming that the information from his son provided insufficient probable cause. *See id.* The Sixth Circuit affirmed the denial of defendant's motion to suppress, noting that a "common-sense approach" must be taken when determining whether the corroborating information provided by an informant is reliable. *See id.* at 943.

Here, after purging the first search warrant affidavit of the tainted information—Chief Hanzey's statement that he had searched the flash drive and found child pornography—the affidavit still contains information that, "under the totality of the circumstances, provided a 'substantial basis' for the magistrate to believe 'there was a fair probability that contraband or evidence of a crime would be found in [the] particular place'" to be searched. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Namely, the affidavit stated that: (1) Chapman-Sexton had told D.C. that his Playstation 4 and flash drive contained child pornography, and that he had engaged in oral sex with a 13-year-old male and still had his boxers at his house; (2) D.C. had viewed child pornography with Chapman-Sexton on the Playstation, flash drive and DVDs when he lived at Defendant's home; and (3) Chapman-Sexton has a prior conviction for possessing child pornography and is a registered sex offender . (Doc. 16 at 10–11.)

Although the factual circumstances here are not identical to those in *Ruth*, the information provided by D.C.—Chapman-Sexton's neighbor and former roommate, and an informant from whom Chief Hanzey has previously received reliable tips—has a similar guarantee of trustworthiness when using a "common-sense approach." *See Ruth*, 489 F. App'x at 943. Moreover, although Chief Hanzey mistakenly believed that he needed to corroborate

11

D.C.'s tip by viewing the contents of the flash drive, the tip Chief Hanzey received from informant D.C. was already corroborated to a reasonable extent. D.C's statements were reliable in light of Chief Hanzey's own personal knowledge that Chapman-Sexton was recently released from prison for a federal child pornography conviction and that Chapman-Sexton is a registered sex offender, and Chief Hanzey's prior dealings with D.C. as a trustworthy informant. (*Id.* at 11.)

Thus, because the search warrant affidavit contained sufficient information to establish probable cause when stripped of the information gained by the illegal initial review of the flash drive, and because that information was corroborated, the first state search warrant is valid. Accordingly, the subsequent state warrants and federal warrant were not "fruit of the poisonous tree." Further, the Court finds that Officer Peachey followed the proper procedures in obtaining the federal warrant. The evidence obtained from the flash drive is therefore admissible under the independent source doctrine.[6]

### III. CONCLUSION

For all of these reasons, the Court **DENIES** Chapman-Sexton's Motion to Suppress.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

**Dated: February 3, 2017**

---

[6] Because the Court holds that the flash drive evidence is admissible under the independent source doctrine, it need not reach the Government's argument that it must be admitted under the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984).