**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSHUA D. CHAPMAN-SEXTON,**

       **CIVIL CASE NO. 2:20-CV-3661**
   **Petitioner,**      **CRIMINAL CASE NO. 2:16-CR-00141(1)**
       **CHIEF JUDGE ALGENON L. MARBLEY**
   **v.**      **Magistrate Judge Elizabeth P. Deavers**

**UNITED STATES OF AMERICA,**

   **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, has filed a Motion to Vacate Sentence under 28 U.S.C. § 2255. (ECF No. 91.) This matter is before the Court on the Motion to Vacate under § 2255, Respondent's Response in Opposition, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that the Motion be **DENIED** and this action be **DISMISSED.**

### I.    FACTS AND PROCEDURAL HISTORY

Petitioner challenges his convictions after a jury trial on two counts of receiving child pornography and one count of possession of child pornography. On August 25, 2017, the Court imposed an aggregate term of 412 months' imprisonment. (ECF No. 72.) On December 18, 2018, the United States Court of Appeals for the Sixth Circuit affirmed that Judgment. *United States v. Chapman-Sexton,* 758 F. App'x 437 (6th Cir. 2018). The Sixth Circuit summarized the facts and procedural history of the case as follows:

> On February 28, 2016, officers from the Buckeye Lake Police Department (BLPD) attempted to stop D.J., a minor, from engaging in a fistfight with another individual. D.J. was with his two adult friends, Deven Coleman and Christian Gullett. The officers arrested D.J., who then confessed that he, Coleman, and Gullett had stolen items from Chapman-Sexton's apartment. Among those items was a flash drive.
>
> BLPD Chief Jim Hanzey later spoke with Chapman-Sexton, who confirmed that his PlayStation 4 and a few other items had been stolen. Because Chapman-Sexton

1

had a prior conviction for possessing child pornography, he was required as a condition of his supervised release to notify his probation officer within 72 hours of being arrested or questioned by a law-enforcement officer. Chapman-Sexton accordingly called his probation officer after speaking with Chief Hanzey.

When Chief Hanzey subsequently spoke with Coleman, Coleman informed Chief Hanzey that both the PlayStation 4 and the flash drive contained child pornography. Coleman claimed that he had watched child pornography on these devices with Chapman-Sexton. He also said that Chapman-Sexton had engaged in sexual conduct with C.B., a 13-year-old boy, and that the boy's boxers were still in Chapman-Sexton's apartment.

The BLPD and Chief Hanzey had previously received incriminating information from Coleman regarding the illegal activity of others, some of which was not reliable. Nevertheless, Chief Hanzey testified that he found Coleman's statements regarding Chapman-Sexton credible because he knew that Chapman-Sexton was a registered sex offender with a federal conviction for possessing child pornography.

After speaking with Chapman-Sexton and Coleman, Chief Hanzey conducted a limited search of the flash drive to confirm Coleman's accusations. He observed three images depicting naked male children or male children engaged in sex acts, at which point he stopped searching the flash drive. Chapman-Sexton then came to the police station and confirmed that the PlayStation 4 and the flash drive belonged to him.

A state prosecutor subsequently drafted an affidavit in support of a warrant to search Chapman-Sexton's apartment. The affidavit set forth that Coleman and others had stolen electronic devices from Chapman-Sexton, that Chapman-Sexton confirmed that these devices were his, that Coleman alleged that the devices contained child pornography, and that Coleman claimed to have watched child pornography on these devices with Chapman-Sexton. It also stated that Chapman-Sexton had been recently released from prison for possessing child pornography and that Coleman had accused Chapman-Sexton of engaging in sexual activity with C.B. Moreover, the affidavit disclosed Chief Hanzey's limited review of the flash drive's contents. A state-court judge issued a search warrant later that day and the police promptly searched Chapman-Sexton's apartment.

The police obtained a second warrant two days later to search the flash drive and other electronic devices gathered from both the burglary and the apartment. Chief Hanzey then resumed his review of the flash drive and observed 13 photographs depicting young males "naked and performing oral sex on adults." He subsequently called Chapman-Sexton's probation officer and discussed the child-pornography allegations.
The above actions caused law-enforcement agents to contact the FBI Child Exploitation Task Force. This in turn prompted the FBI to obtain a federal warrant to search the electronic devices in question. Upon searching Chapman-Sexton's

2

devices, the FBI discovered repeated visits to a Russian child-pornography website, videos of young males masturbating, images of naked children and children engaged in sex acts, and text messages between Chapman-Sexton and C.B. that suggested sexual contact. Among those messages was one where Chapman-Sexton told C.B.: "I love you too, now delete these messages," and C.B. replied: "We are really just friends with benefits, not a couple, okay?"

B. Procedural background

A grand jury indicted Chapman-Sexton on two counts of receiving child pornography and on one count of possessing child pornography. All of the video and images supporting the indictment were on the flash drive. Chapman-Sexton moved to suppress any evidence obtained from the forensic examination of his flash drive, arguing that Chief Hanzey's initial review violated Chapman-Sexton's constitutional rights and that all subsequent searches were inadmissible as "fruit of the poisonous tree." His motion was denied. *United States v. Chapman-Sexton*, No. 2:16-cr-141, 2017 WL 476737 (S.D. Ohio Feb. 3, 2017). The district court found that Chief Hanzey's warrantless review of the flash drive was indeed unlawful, but concluded that the evidence was nevertheless admissible under the independent-source doctrine. *Id.* at *4–6.

Chapman-Sexton was convicted by a jury on all three counts. At sentencing, the district court found that Chapman-Sexton had "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." It thus applied a five-level sentencing enhancement under U.S.S.G. § 2G2.2(b)(5). This pattern-of-activity finding was based on evidence that Chapman-Sexton had previously sexually abused Coleman and had recently sexually abused C.B. These accusations were supported by Coleman's trial testimony, FBI interviews of Coleman and C.B., an officer's interview of C.B.'s mother, and text messages sent between Chapman-Sexton and C.B.

Chapman-Sexton received two 292-month sentences and one 120-month sentence, to be served concurrently.

*Id.*, at 438-440. On June 17, 2019, the United States Supreme Court denied the petition for

a writ of *certiorari*. *Chapman-Sexton v. United States*, 139 S.Ct. 2731 (2019).

On July 17, 2020, Petitioner executed this Motion to Vacate under 28 U.S.C. § 2255.

(ECF No. 91, PAGEID # 1850.) He asserts that he was denied the effective assistance of counsel

because his attorney failed to call defense witnesses (claims one and two); failed to hire a

defense expert to test the flash drive for Petitioner's fingerprints or DNA (claim three); failed to

3

properly move for judgment of acquittal under Rule 29; and that he was denied the effective assistance of appellate counsel because his attorney failed to raise a claim of insufficiency of the evidence on appeal (claim four); that he was denied his right to counsel of choice (claim five); and that he has newly discovered evidence warranting a new trial (claim six).  It is the Respondent's position that this action should be dismissed as time-barred and, alternatively, that Petitioner's claims lack merit.

## II.     STATUTE OF LIMITATIONS

A one-year statute of limitations applies to the filing of federal habeas corpus petitions. 28 U.S.C. § 2255(f) provides:

> A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Applied here, the statute of limitations began to run under the provision of 28 U.S.C. § 2255(f)(1) on June 17, 2019, when the United States Supreme Court denied the petition for a writ of *certiorari.  See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  It expired one year later, on June 17, 2020.  Petitioner executed this habeas corpus petition on July 17, 2020, approximately one month late.  Thus, it is untimely.

    a.   **Equitable Tolling of the Statute of Limitations:**

Petitioner, however, contends that this action is timely because on June 25, 2020, he filed a request for an extension of time for filing a motion under 28 U.S.C. § 2255 based on lockdowns imposed in the prison as a result of COVID-19. According to the Petitioner, he had been on lockdown status since April 1, 2020 due to COVID-19 and had limited access to the prison law library and copying machine. (ECF No. 90, PAGEID # 1831.) Petitioner attached a Memorandum from the Bureau of Prisons dated April 8, 2020, indicating that prisoners would be isolated in their cells for fourteen days due to COVID-19 (PAGEID # 1834), and a letter from his attorney dated March 17, 2020, apologizing for the delay in providing Petitioner with his legal documents. (PAGEID # 1836.) Petitioner also attached a Memorandum from the Federal Bureau of Prisons dated June 2, 2020, indicating that a COVID-19 lockdown would be imposed in the jail for fourteen days. (PAGEID # 1837-38.)

A petitioner may obtain equitable tolling of the statute of limitations if he has diligently pursued his rights and some extraordinary circumstance stood in his way and prevented his timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). "Equitable tolling allows courts to review time-barred habeas petitions provided that a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Webb v. United States,* No. 14-5380, 2017 WL 655774, at *5 (6th Cir. Feb. 17, 2017), *cert. denied*, (U.S. June 26, 2017) (quoting *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012)). "Petitioner bears the burden of persuading the court that he or she is entitled to equitable tolling." *Johnson v. United States*, 457 F. App'x. 462, 469 (6th Cir. 2012) (quoting *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)). Courts apply equitable tolling sparingly. *United States v. Sferrazza*, 645 F. App'x. 399, 408 (6th Cir. 2016) (citing *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir.

2010)).  A prisoner's pro se incarcerated status, lack of knowledge of the law, and limited access to the prison's law library or to legal materials do not justify equitable tolling.  *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750–51 (6th Cir. 2011).  Such conditions are typical for many prisoners, and therefore do not constitute extraordinary circumstances.  *Adams v. Chillicothe Corr. Inst.,* No. 2:16-CV-563, 2016 WL 4442826, at *2 (S.D. Ohio Aug. 22, 2016).  This Court has recognized the "extraordinary circumstance" imposed by impact of COVID-19.  *See Pickens v. Shoop*, No. 1:19-CV-558, 2020 WL 3128536, at *3 (S.D. Ohio June 12, 2020).   However, "[c]ourts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition." *Andrews v. United States,* Case No. 17–1693, 2017 WL 6376401, at * 2 (6th Cir. Dec. 12, 2017) (citing *Paulcin v. McDonough*, 259 Fed. App'x. 211, 213 (11th Cir. 2007) and *United States v. Fredette*, 191 F. App'x. 711, 713 (10th Cir. 2006)).  These are the circumstances here.  The record does not indicate that impact of any extraordinary circumstances imposed by COVID-19 prevented Petitioner from timely filing this federal habeas corpus petition within the one-year period following the Supreme Court's denial of the writ of *certioari* on June 17, 2019.

    a.   **Actual Innocence, Claim Six**

In claim six, Petitioner asserts that he has new evidence regarding prosecution witness James Hanzey warranting a new trial.  Specifically, Petitioner states that he learned that, subsequent to his convictions in this case, Buckeye Lake Police Chief James Hanzey, who

6

testified against him,[1] was charged and found guilty of incompetence, dishonesty, neglect of duty and other acts of misfeasance or malfeasance. (ECF No. 91, PAGEID # 1874.)

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S. Ct. 851, 130 L.Ed. 2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed.2d 808...."To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S. Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321, 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed.2d 808.

Souter v. Jones, 395 F.3d 577, 600 (6th Cir. 2005). "To invoke the miscarriage of justice exception to AEDPA's statute of limitations . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup,* 513 U.S. at 327).

---

[1] Hanzey testified that, on February 29, 2016, he responded to a call from Officer Steve Ridder for assistance with a burglary. (*Transcript,* ECF No. 68, PAGEID # 991-92.) Petitioner informed Hanzey that his PlayStation 4 and several other objects had been stolen from his home. (PAGEID # 994.) Hanzey spoke to Deven Coleman, who initially denied involvement in the burglary, but then admitted he had taken the property from Petitioner's home and gave Hanzey the stolen items. (PAGEID # 994-95.) Petitioner identified the property, including a PlayStation 4, controllers, two games a flash drive and cords, as his. (PAGEID # 995-96, 998, 1000.) Hanzey viewed the flash drive on his computer, because Coleman told him it contained child pornography. (PAGEID # 1003-1004.) He observed three photographs of naked children performing oral sex on adults. (PAGEID # 1004.) Hanzey subsequently obtained a search warrant and submitted the property to BCI for examination. (PAGEID # 1004-1005.) Police obtained several phones, a couple more PlayStations, and some cameras pursuant to a search warrant from Petitioner's home. (PAGEID # 1005.) Hanzey notified Petitioner's probation officer. (*Id*.)

Here, Petitioner has offered no credible evidence of actual innocence and or new reliable evidence supporting a claim of actual innocence. The record fails to indicate that any charges brought against Hanzey subsequent to Petitioner's convictions affected Hanzey's testimony in this case or Petitioner's verdict of guilty. Additionally, Hanzey's testimony was merely cumulative to other substantial evidence of guilt. Thus, Petitioner has failed to establish that he is entitled to equitable tolling under this exception or that his convictions should be vacated on this basis.

Claim six is without merit.

Even assuming *arguendo,* that Petitioner had timely filed this action, the record nonetheless reflects no basis for relief.

### III. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

To obtain relief under 28 U.S.C. § 2255, a prisoner must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). In addition, "it is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States,* 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)). Accordingly, if a claim could have been raised on direct appeal, but was not,

8

the Court will not consider the claim via a § 2255 motion unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claim previously; or (2) that he is "actually innocent" of the crime. *Ray,* 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to call as defense witnesses William Remis or Rondia Sexton, and failed to properly cross-examine Sexton, who testified as a prosecution witness. (*See Transcript*, ECF No. 68, PAGEID # 1141.) Additionally, Petitioner complains that his attorney improperly failed to obtain an expert witness to testify regarding the lack of fingerprint or DNA evidence connecting Petitioner to the flash or thumb drive purportedly taken from Petitioner's PlayStation with pornographic images of children, and failed properly to request a judgment of acquittal based on insufficient evidence to establish the charges. Petitioner asserts that appellate counsel performed in a constitutionally inadequate manner by failing to raise a claim of insufficiency of the evidence on direct appeal. Finally, Petitioner asserts that he unconstitutionally was denied the right to his attorney of choice.

Respondent has submitted an Affidavit from Petitioner's former defense counsel, H. Timothy Merkle, in response, indicating in relevant part as follows:

> I represented Joshua Chapman-Sexton at the district court level in two federal matters in which he was charged with child pornography offenses, specifically 2:16-CR-141 and 2:10-CR-174, pursuant to appointment by the Court;
>
> \*\*\*
>
> I was initially appointed to represent Mr. Chapman-Sexton in case 2:10-CR-174, in which he pled guilty to possession of child pornography and was sentenced to 48 months of incarceration, followed by a ten-year term of supervised release. I was

9

notified in March of 2016 that Mr. Chapman-Sexton had been arrested for allegedly violating the terms of his supervised release;

Throughout the summer of 2016, I discussed the alleged violations of the supervised release conditions and the potential of new criminal charges with AUSA Hill and Mr. Chapman-Sexton, in an attempt to reach a global resolution of all of the issues;

In approximately June of 2016, Mr. Chapman-Sexton informed me that he wanted to hire a different attorney named Jo Kaiser. I therefore reached out to Ms. Kaiser to inquire whether she intended to represent Mr. Chapman-Sexton in the pending federal matter(s). Ms. Kaiser informed me that she had informed Mr. Chapman-Sexton of the amount that he needed to pay her as a retainer, that Mr. Chapman-Sexton had not paid the retainer, and that she would not get involved in the case until the retainer had been paid. I received no further communication from Ms. Kaiser or Mr. Chapman-Sexton in regards [to] any desire of Mr. Chapman-Sexton to obtain new counsel. If Mr. Chapman-Sexton had expressed a desire for new court-appointed counsel, I would have requested that the Court make the appropriate determinations in regards to such;

\*\*\*

I engaged in numerous lengthy conversations with Mr. Chapman-Sexton and his mother, Rondia Sexton. During none of those conversations did Ms. Sexton indicate that she knew of any conversation that Mr. Chapman-Sexton did or did not have with Deven Coleman. At no time did either Mr. Chapman-Sexton or Ms. Sexton indicate in any way that Ms. Sexton was a party to any phone conversation between Mr. Chapman-Sexton and Deven Coleman;

During trial preparation, Mr. Chapman-Sexton informed me of an individual named William Remias, who Mr. Chapman-Sexton claimed had information regarding Deven Coleman. An investigator I hired contacted Mr. Remias, interviewed Mr. Remias, and prepared a report of that interview. During the interview, Mr. Remias alluded to an incident that had occurred at Mr. Chapman-Sexton's house in which Mr. Coleman was intoxicated and an argument between Mr. Coleman and Mr. Chapman-Sexton occurred. During that argument. Mr. Coleman made a comment about calling the cops on Mr. Chapman-Sexton. Mr. Remias did not say that he heard Mr. Coleman threaten to set Josh up for child pornography;

Based on my evaluation of the various potential witnesses, I determined that testimony from Kenneth Duane Duvall, Mr. Chapman-Sexton's cousin and former roommate to both Mr. Chapman-Sexton and Mr. Coleman, would more effectively present information helpful to the defense about Mr. Coleman than would testimony from Mr. Remis.

(*Affidavit of H. Timothy Merkle*, ECF No. 99-1, PAGEID # 1919-21.)

    a.   **Ineffective Assistance of Counsel Standard of Review**

"In all criminal prosecutions," the Sixth Amendment affords "the accused ... the right ... to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to effective assistance of counsel serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation and quotations omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a movant claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687. To show deficient performance, a petitioner must demonstrate that his counsel's representation "'fell below an objective standard of reasonableness.'" *Richardson v. Palmer*, 941 F.3d 838, 856 (6th Cir. 2019) (quoting *Strickland*, 466 U.S. at 688). "Regarding prejudice," a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Richardson,* 941 F.3d at 856 (quoting *Premo v. Moore*, 562 U.S. 115, 121 (2011)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

    b.   **Failure to Call Defense Witnesses**

The record indicates that defense counsel contacted Remias and Ms.Sexton and, based on the information he obtained, decided not to call them as defense witnesses. That decision did not amount to constitutional ineffective assistance of counsel. An attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466

11

U.S. at 690). "Counsels traditionally enjoy 'discretion over deciding which witnesses to call and how to examine them.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 848 (6th Cir. 2017) (citing *Carter v. Mitchell*, 829 F.3d 455, 471 (6th Cir.2016) ; *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012) ("[w]hether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy that merit *Strickland* deference").

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana, supra*, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *See* Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).

*Id*. at 689. Moreover, Petitioner cannot establish prejudice. Nothing in the record supports Petitioner's allegation that these witnesses, or any other potential defense witness, would have assisted the defense. "[C]omplaints about uncalled witnesses are disfavored because the presentation of testimonial evidence is a matter of trial strategy. . . . 'the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim.'" *Noble v. United States*, Nos. 2:10-CR-51-JRG, 2:16-CV-38-JRG, 2018 WL 4441240, at *12 (E.D. Tenn. Sept. 17, 2018) (quoting *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)). Petitioner's

12

allegation that additional witnesses could have provided exculpatory testimony is without support.

The record likewise fails to reflect that an expert witness would have assisted the defense. It was without dispute that Deven Coleman took Petitioner's PlayStation 4, the controllers to the game, the power cord and a white flash drive from Petitioner's home and later gave those items to the police. (*Transcript*, ECF No. 68, PAGEID # 995; 1103-06.)  Petitioner identified the property to police as his.  (PAGEID # 996, 998.)  Defense counsel nonetheless argued that police had not bothered to corroborate through trace evidence whether Petitioner had actually possessed the flash or thumb drive Coleman gave to police and that Petitioner identified it as his without knowing that it contained images of child pornography.  (ECF No. 68, PAGEID # 971-72.) Defense counsel further argued that police had made no effort to determine whether it had actually been possessed by the Petitioner by obtaining physical evidence because they assumed that Petitioner was guilty of the charges.  (ECF No. 71, PAGEID # 1426-27, 1429.)  The defense maintained Coleman could not be believed.  (PAGEID # 1430-39.)  This was not an unreasonable trial tactic and did not amount to constitutionally ineffective assistance.  "[T]he failure to call a particular witness or present crucial evidence may constitute ineffective assistance of counsel when it deprives a defendant of a substantial defense."  *Hancock v. United States*, Nos. 2:08-CR-75-JRG-DHI, 2:13-CV-252-JRG, 2016 WL 4290468, at *3 (E.D. Tenn. Aug. 15, 2016) (citing *Hutchins v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002)).  Nothing in the record supports Petitioner's claim that an expert witness could have provided any exculpatory evidence for the defense.  Indeed, it is possible that it could have further incriminated the Petitioner.

Petitioner has failed to establish that he was denied the effective assistance of counsel based on his attorney's failure to call additional defense witnesses.

### c. Denial of Right to Counsel of Choice

Petitioner asserts that he was denied the right to hire an attorney of his own choice.

The Sixth Amendment right to effective assistance of counsel includes the "right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). "[A] denial of this Sixth Amendment right is a structural error not subject to harmless error analysis, but only when the denial is unjustifiable." *Dixon v. Warden, S. Oh. Corr. Facility*, 940 F.Supp. 2d 614, 625 (S.D. Ohio Feb.11, 2013) (citing *Gonzalez-Lopez*, 548 U.S. at 148). However, a criminal defendant's right to the attorney of his choice is "circumscribed in several important respects." *Gonzalez–Lopez*, 548 U.S. at 144 (quoting *Wheat v. United States*, 486 U.S. at 159). Significantly, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez–Lopez*, 548 U.S. at 151–52 (citations omitted). Additionally,

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney*, 399 U.S. 42, 53–54, 90 S.Ct. 1975, 1982–1983, 26 L.Ed.2d 419 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

*Morris v. Slappy,* 461 U.S. 1, 11–12 (1983). The Sixth Amendment does not guarantee the defendant a "meaningful relationship" with his attorney. *Id*. at 14. The decision regarding

14

whether to appoint new counsel at a defendant's request is committed to the sound discretion of the district court. *See United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

Further, "[a] defendant who wishes to substitute counsel must notify the trial court of his or her 'serious dissatisfaction with counsel,' and the trial court is then 'obligated to inquire into the defendant's complaint and determine whether there is good cause for the substitution.'" *Dixon v. Warden, Southern Ohio Corr. Facility*, 940 F.Supp.2d 614, 625 (S.D. Ohio 2013) (citing *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008)). A criminal defendant wishing to substitute counsel must express his dissatisfaction with counsel to the court. *Benitez*, 521 F.3d at 632 (quoting *United States v. Iles*, 906 F.2d 1122, 1131–32 (requiring the defendant to "show his hand" by alerting the court of his desire to substitute counsel). The court thereafter is required to determine whether there is good cause for substitution of counsel by balancing" the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Benitez*, 521 F.3d at 632 (quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

Here, Petitioner never notified the Court that he wished to retain new counsel to represent him. That being the case, the record does not support Petitioner's claim that he was denied the right to counsel of choice.

### d. Ineffective Assistance of Appellate Counsel, Insufficiency of Evidence

Petitioner asserts that the government failed to establish that he received the files forming the basis for the charges or that the PlayStation devices could have connected to the internet or interstate commerce or that he used the PlayStation to receive the files containing the illegal images. (ECF No. 91, PAGEID # 1862-64.) On this basis, Petitioner asserts that his attorney failed adequately to request a judgment of acquittal and appellate counsel unconstitutionally

15

failed to raise a claim of insufficiency of the evidence on direct appeal. These claims plainly lack merit.

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). . . . Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*. citing *Wilson* . . . . The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013). Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

> (1) Were the omitted issues "significant and obvious"?
>
> (2) Was there arguably contrary authority on the omitted issues?
>
> (3) Were the omitted issues clearly stronger than those presented?
>
> (4) Were the omitted issues objected to at trial?
>
> (5) Were the trial court's rulings subject to deference on appeal?
>
> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> (7) What was appellate counsel's level of experience and expertise?
>
> (8) Did the petitioner and appellate counsel meet and go over possible issues?
>
> (9) Is there evidence that counsel reviewed all the facts?
>
> (10) Were the omitted issues dealt with in other assignments of error?
>
> (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999) (citations omitted).

Counts 1 and 2 charged Petitioner with receiving child pornography, having previously been convicted of an offense under 18 U.S.C. § 2252, specifically two files named "and_thin_pt.avi" and "43496782jLZ.jpg", in violation of 18 U.S.C. § 2252(a)(2), (b)(1). Count 3 charged Petitioner with possession of child pornography, having previously been convicted of an offense under 18 U.S.C. § 2252, specifically the digital image and video files stored on a Sandisk 4GBUSB Drive,[2] in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). These charges require the government to prove that the visual depiction(s) were received using interstate commerce. This is not, however, a strenuous requirement. *See United States v. Napier*, 787 F.3d 333, 345 (6th Cir. 2015).

> The relevant inquiry is whether there is enough circumstantial evidence that these electronic communications were transmitted through interstate wires. Given the omnipresent nature of the Internet, this is not a difficult burden for the government to satisfy. *See United States v. Mellies*, 329 Fed.Appx. 592, 605–07 (6th Cir. 2009); *see also United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir .2006) ("[W]e conclude that because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce."); *United States v. Hilton*, 257 F.3d 50, 54–55 (1st Cir. 2001) ("[P]roof of transmission of pornography over the Internet ... satisfies the interstate commerce element of the offense," which the government satisfied through testimony from a computer forensics agent that images had "likely" been downloaded from the Internet because the storage disk "contained software used in conjunction with Internet chat rooms."); *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (joining the First Circuit in holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce") (alteration in original) (internal quotation marks omitted); *United States v. Harris*, 548 Fed.Appx. 679, 682 (2d Cir. 2013) (same); *United States v. White*, 2 Fed.Appx. 295, 298 (4th Cir. 2001) (per curiam) (same). In the present case, we find that Napier's use of the Internet, coupled with the varying timestamps indicated on his emails, is sufficient to satisfy the federal jurisdictional nexus.

*Id.*, at 346-47.

---

[2] The Sandisck 4GUBUSB Drive is the flash or thumb drive containing downloaded images of child pornography. (*Transcript,* ECF No. 68, PAGEID # 965.)

Here, evidence indicated that Petitioner used his PlayStation gaming system to access the child erotica and pornagraphy websites on the internet. (*Transcript,* ECF No. 69, PAGEID # 1200-1202, 1206.) The thumb drive identified as his by Coleman contained images of child pornography. (*Transcript*, ECF No. 68, PAGEID # 1004.) Coleman took the flash drive after Petitioner told him it contained images of child pornography. (PAGEID # 1066, 1105-06, 1119, 1127.) The thumb drive was plugged into the front of the PlayStation 4. (PAGEID # 1068.) Forensic examination indicated that the PlayStation 4 and thumb drive contained child pornographic images. (PAGEID # 1166.) The thumb drive had over four thousand photographs and several videos depicting young men in various stages of nudity and/or sexual activity. (PAGEID # 1171.) The PlayStation 4 contained one photograph and browsing history. (PAGEID # 1171.) The videos were placed on the thumb drive on March 15, 2015, and depicted young males engaging in nudity and masturbation. (*Transcript*, ECF No. 69, PAGEID # 1180, 1182.) The videos came from a website called Omegle.com which could not be accessed without using the internet. (PAGEID # 1185.) The file image named 43496782jLZ had been created on June 12, 2015. (PAGEID # 1188.) The second video, named and_thin-pt2 was placed on the thumb drive on March 15, 2015. (PAGEID # 1182.) Thus, the evidence indicated that Petitioner used the PlayStation gaming system to access the internet in order to obtain and download child pornographic images and the files referred to. When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia,* 443 U.S. 307, 319 (1979), the record reflects constitutionally sufficient evidence to sustain Petitioner's convictions.

Petitioner has failed to establish that he was denied the effective assistance of trial or appellate counsel on this basis.

## V.     DISPOSITION

**WHEREUPON**, it is **RECOMMENDED** that the Motion to Vacate under 28 U.S.C. § 2255 be **DENIED** and this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**